Reuben D. Nathan, Esq. (SBN 208436)
NATHAN & ASSOCIATES, APC
Email: *rnathan@nathanlawpractice.com*
2901 West Pacific Coast Highway, Suite 350
Newport Beach, California 92663
Phone: (949) 263-5992
Facsimile: (949) 209-1948

Ross Cornell, Esq. (SBN 210413)
LAW OFFICES OF ROSS CORNELL, APC
Email: *ross.law@me.com*
111 W. Ocean Blvd., Suite 400
Long Beach, CA  90802
Phone:  (562) 612-1708
Facsimile: (562) 394-9556

Attorneys for Plaintiff,
Ian Anderson and the Proposed Class

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN ANDERSON, an individual on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>PINNACLE FOODS, INC. and DOES 1 through 25, inclusive.<br><br>Defendants. | Case No. 5:16-cv-6871<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>JURY TRIAL DEMANDED |

1

COMES NOW PLAINTIFF, IAN ANDERSON, WHO HEREBY ALLEGES THE FOLLOWING:

Plaintiff, IAN ANDERSON (hereinafter the "Plaintiff") brings this action on behalf of himself and all others similarly situated against PINNACLE FOODS, INC. (hereinafter the "Defendant"). The allegations in this Complaint, stated on information and belief, have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## NATURE OF ACTION

1.      Plaintiff files this class action lawsuit on behalf of himself and all similarly situated persons who purchased Swanson© Pot Pies, Hungry-Man© Frozen Meals and Duncan Hines© Cake Mixes containing Partially Hydrogenated Oil ("PHO") (hereinafter collectively referred to as the "Trans Fat Food") as more particularly identified in Exhibit A to this Complaint, which is incorporated by reference as thought set forth fully herein.

2.      Plaintiff brings this action on behalf of himself and a California and Nationwide proposed Class of purchasers of the Trans Fat Food against the Defendant for violations of California Consumer Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, breach of express warranty, and breach of implied warranty.

3.      Plaintiff has purchased the Trans Fat Food over a period of several years. During the class period, the Defendant has produced and distributed consumer foods under the brand names Swanson©, Hungry-Man© and Duncan Hines©. Plaintiff has purchased each of these brands for personal and/or household purposes.

4.      PHO is a food additive that has been banned in the United States and many other parts of the world due to its high levels of artificial trans fats (hereinafter "Trans Fats"). Trans Fats are known carcinogens, are a leading cause of coronary heart disease,

2

negatively effect cholesterol levels, increase the risk of stroke and type II diabetes, cause cognitive decline and Alzheimer's Disease, and result in adverse effects on fetuses and breastfeeding infants such as impaired growth.

5.    On June 16, 2015, the United States Food and Drug Administration (the "FDA") issued a final determination that PHO is unsafe because of its negative health effects.  *See* "Final Determination Regarding Partially Hydrogenated Oils," 80 Fed. Reg. 34650, 34650-34670 (June 17, 2015) (hereinafter the "FDA Order").  Even after the FDA Order, the Defendant continues to include PHO in the Trans Fat Food, with full knowledge that PHO is an unlawful, unhealthy, unsafe, toxic food additive that renders the Trans Fat Food adulterated.

6.    Safe, low-cost and commercially acceptable alternatives are available that can replace PHO, including alternatives presently in use by Defendant's competitors. Reasonable healthy alternatives notwithstanding, Defendant intentionally elects to utilize PHO instead of safe alternatives in an effort to unfairly compete and increase its profits at the expense of consumer health and safety, resulting in the widespread sale of adulterated Trans Fat Food to consumers.

7.    PHO is the main source of Trans Fat in the diets of American consumers. Despite its use of PHO in the Trans Fat Food and the fact that PHO results in dangerous quantities of Trans Fat in the Trans Fat Food, Defendant intentionally mislabels some or all of the Trans Fat Food by indicating that they contain no Trans Fat for the purpose of inducing consumers to purchase the adulterated Trans Fat Food.

8.    There is voluminous scientific evidence that there is no safe level of PHO or Trans Fat and that its effect on the American consumer is substantially harmful to health.

9.    PHO is non-essential and provides no known benefit to human health.  The Trans Fat Food unnecessarily contains PHO when there are commercially viable and safe substitutes for PHO that are already in use by Defendant's competitors.  The Defendant's

**CLASS ACTION COMPLAINT**

insistence on using PHO in the Trans Fat Food wrongfully causes the Trans Fat Food to be adulterated and increases the risk of degeneration and disease for Plaintiff and the Proposed Class.

10.     Defendant's use of PHO in the Trans Fat Food is unfair because such conduct is immoral, unethical, unscrupulous and substantially injurious to Plaintiff and the Proposed Class and because the utility of Defendant's conduct is outweighed by the gravity of harm caused thereby.

11.     Defendant's use of PHO in the Trans Fat Food violates public policy as is set forth in California Heath & Safety Code 114377 and the FDA Order.  The harm to Plaintiff and the Proposed Class resulting from Defendant's business practices as alleged herein is substantial, is not outweighed by any benefit to consumers or competition, and is not one consumers could have reasonably avoided.  The Trans Fat Food is not fit for human consumption, is adulterated, and therefore has no economic value.

12.     On July 11, 2003, the FDA published a final rule in the Federal Register that amended its regulations on food labeling to require that Trans Fat be declared in the nutrition label of conventional foods and dietary supplements (68 FR 41434) (the "Labeling Order"). The rule became effective January 1, 2006, and sets forth the FDA's position on the issue of Trans Fats in consumer food products.  The FDA recommends that consumers limit their intake of Trans Fat.  In order for consumers to have the opportunity to follow the FDA recommendations, consumers – including the Plaintiff and the Proposed Class – must know the amount of Trans Fat in the foods they eat.

13.     Despite the clear direction provided by the Labeling Order, the Defendant has failed and refused to provide adequate, accurate, reliable labeling regarding Trans Fat content in the Trans Fat Foods.

14.     As a result of the confusing, inconsistent and misleading labeling of the Trans Fat content in the Trans Fat Foods, reasonable consumers – including Plaintiff and

4

**CLASS ACTION COMPLAINT**

the Proposed Class – are unable to make informed decisions about their dietary intake of harmful Trans Fat. In an effort to conceal and obfuscate the presence of harmful Trans Fat in the Trans Fat Food, and in order to render it unreasonably difficult for the average consumer to properly evaluate the Trans Fat Food for dietary health implications, the Defendant places confusing, misleading labels on the Trans Fat Food by, *inter alia*, failing and refusing to comply with the Labeling Order, by making no Trans Fat disclosure on nutrition information labels and by indicating 0g of Trans Fat in products that contain PHO.

15.     In comparing food purchase options, Plaintiff and the Proposed Class are regularly misled insofar as foods whose labels contain no Trans Fat disclosure are reasonably presumed to contain no or less Trans Fat than foods that present Trans Fat in their nutrition information label. The Defendant's practice in this regard is misleading because, in truth, those Trans Fat Foods that do not include a Trans Fat disclosure on their nutrition information label do, in fact, contain PHO and therefore necessarily include Trans Fat. The reasonable conclusion drawn by Plaintiff and the Proposed Class – i.e. that foods with no Trans Fat disclosure on their nutrition information label have no Trans Fat as compared to those foods with a Trans Fat disclosure on their nutrition information label – is nonetheless a false conclusion that is the result of misleading labeling of the Trans Fat Food by the Defendant.

16.     Plaintiff and the Proposed Class reasonably rely on the prominent large print nutrition information on the Trans Fat Food labels, and cannot reasonably be expected to and did not sift through lengthy fine print in the ingredients list of the Trans Fat Food in order to discover that the nutrition information labeling is/was misleading. Plaintiff and the Proposed Class are, therefore, the victims of a planned pattern and scheme of misleading labeling regarding Trans Fat content in the Trans Fat Food.

**CLASS ACTION COMPLAINT**

17.   Plaintiff IAN ANDERSON and members of the Proposed Class purchased the Defendant's branded food products containing Trans Fat throughout the Class Period.

18.   The purpose of this action is to redress the Defendant's wrongful, unfair and unlawful business practices as set forth herein.  Plaintiff hereby seeks an injunctive order compelling the Defendant to, *inter alia*, (1) cease producing, marketing or distributing food products containing PHO, including but not limited to the Trans Fat Food, (2) recall and destroy food products containing PHO, including but not limited to the Trans Fat Food, (3) pay restitution of all ill-gotten gains to the Plaintiff and the Proposed Class arising from the sale of the Trans Fat Food, (4) disgorge all profits arising from the sale of the Trans Fat Food and (5) for an order awarding actual damages, punitive damages, attorney's fees and costs as allowed by law.

## PARTIES

19.   Plaintiff is a citizen of California, who resides in the city of Salinas.  From approximately 2012 through the present, Plaintiff has purchased Defendant's products containing Trans Fat from various retail locations in California.

20.   On information and belief, Defendant is a Delaware corporation with its principal place of business at 399 Jefferson Rd. in Parsippany, New Jersey 07054. Defendant is the manufacturer of the Trans Fat Food, which Defendant distributes and sells to consumers, and which was purchased by Plaintiff and the Proposed Class members for family or household purposes throughout California and the United States.

21.   The true names and capacities, whether individual, corporate, associate or otherwise of each of the defendants designated herein as a DOE are unknown to Plaintiff at this time, who therefore, sue said defendants by fictitious names, and will ask leave of this Court for permission to amend this Complaint to show their names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon

6

**CLASS ACTION COMPLAINT**

alleges that each of the defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to, and caused injuries and damages thereby to these Plaintiffs as alleged herein.

22.    On information and belief, Plaintiff alleges that at all times herein mentioned, each of the defendants was acting as the agent, servant or employee of the other defendants and that during the times and places of the incident in question, Defendant and each of their agents, servants, and employees became liable to Plaintiff and class members for the reasons described in the complaint herein, and thereby proximately caused Plaintiffs to sustain damages as set forth herein.  On information and belief, Plaintiffs allege that Defendants carried out a joint scheme with a common business plan and policies in all respects pertinent hereto and that all acts and omissions herein complained of were performed in knowing cooperation with each other.

23.    On information and belief, Plaintiffs allege that the shareholders, executive officers, managers, and supervisors of the Defendants directed, authorized, ratified and/or participated in the actions, omissions and other conduct that gives rise to the claims asserted herein.  Plaintiff is informed and believes, and thereon alleges, that each of said defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction according to 28 U.S.C. § 1332(d), because this case is a class action where the aggregate claims of all members of the Proposed Class are in excess of $5,000,000.00, exclusive of interest and costs and most members of the Proposed Class are citizens of states different from the Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

**CLASS ACTION COMPLAINT**

25.     Pursuant to 28 U.S.C. §1391, this Court is the proper venue since Plaintiff is a resident of this District, which is where the Defendant's actions giving rise to the injuries suffered by the Plaintiff occurred.

## PRIVATE ATTORNEYS GENERAL ALLEGATIONS

26.     In addition to asserting class claims, Plaintiffs assert claims on behalf of class members pursuant to California Business & Professions Code § 17200, *et seq.*  The purpose of such claims is to obtain injunctive orders regarding the unfair and unlawful business practices which emanated from Defendant's principal place of business as alleged herein.  This private attorneys general action is necessary and appropriate because Defendant has engaged in wrongful acts described herein as part of the regular practice of its business.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action and all claims stated within on his own behalf and on behalf of all similarly situated persons pursuant to Federal Rule of Civil Procedure 23.

28.     The claims and causes of action alleged herein arise under Federal law and California law.

29.     Plaintiffs seeks to certify the following Proposed Class:

All persons domiciled within the United States who, on or after November 30, 2012, purchased Trans Fat Food manufactured or sold by Pinnacle Foods, Inc. containing partially hydrogenated oil.

30.     Excluded from the class is the Defendant in this action, any entity in which Defendant has a controlling interest, including, but not limited to officers, directors, shareholders, current employees and any and all legal representatives, heirs, successors, and assigns of Defendant.

**CLASS ACTION COMPLAINT**

31.     There is a well-defined community of interest in this litigation and the class is easily ascertainable:

A.     Numerosity:  The members of the Proposed Class are so numerous that joinder of all members is impracticable. While the exact number of Proposed Class members can only be ascertained through discovery, Plaintiff believes that over one million Californians and United States citizens have purchased and continue to purchase the Trans Fat Food and that, as a result, on information and belief, there are at least one million aggregate members of the Proposed Class.

B.     Typicality:  Plaintiff's claims are typical of the claims of the Proposed Class. Plaintiff and members of the Proposed Class sustained injuries and damages arising out of Defendant's common course of conduct in violation of the law as alleged herein. The injuries and damages of each member of the Proposed Class were caused directly by Defendant's wrongful conduct as alleged herein and are/were common to all Proposed Class members.

C.     Adequacy:  Plaintiff does not have a conflict with the Proposed Class and is qualified to and will fairly and adequately protect the interests of each member of the Proposed Class with whom he has a well- defined community of interest and typicality of claims, as alleged herein.  Plaintiff acknowledges that he have an obligation to the Court to make known any relationship, conflict, or differences vis-à-vis any Proposed Class member.  Plaintiff's attorneys and Proposed Class counsel are well versed in the rules governing class action and complex litigation regarding discovery, certification, and settlement.

D.     Superiority:  A class action is superior to other available means for the fair and efficient adjudication of this controversy and will result in a substantial benefit to the Proposed Class, the public and the Court.  The likelihood of individual class members prosecuting separate claims is remote, and individual members of the Proposed Class do

**CLASS ACTION COMPLAINT**

not have a significant interest in individually controlling the prosecution of separate actions.  The cost to the judicial system of the adjudication of many individualized claims would substantial whereas the litigation of these claims simultaneously as a class action will result in substantial savings of judicial resources. Furthermore, the prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for defendants under the law alleged herein. Class treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Class treatment will enable the Proposed Class members to redress the wrongs done to them and to serve the public interest by ensuring that Defendant's conduct be punished and enjoined from future repetition.  Class treatment will thus result in the most fair and efficient adjudication of this controversy, as well as conferring substantial benefits on the litigants, the public and the Court.

32.     There are common questions of law and fact as to the class that predominate over questions affecting only individual members, including but not limited to:

A.     Whether Defendant has engaged in an unlawful business practice;

B.     Whether Defendant engaged in unlawful advertising;

C.     Whether the Trans Fat Food contains PHO on a class-wide basis;

D.     Whether the Trans Fat Food contains artificial trans fat as a result of the use of PHO by the Defendant in the production of the Trans Fat Food;

E.     Whether Defendant warranted that the Trans Fat Food is fit for human consumption when offered for sale;

F.     Whether Defendant knew that it misrepresented that the Trans Fat Food was fit for human consumption;

10

**CLASS ACTION COMPLAINT**

G.     Whether Defendant warranted that the Trans Fat Food was legally compliant when offered for sale;

I.     Whether Defendant breached warranties in connection with the Trans Fat Food;

J.     Whether or not Defendant made misrepresentations, false promises, or reckless statements to Plaintiff and Proposed Class members;

K.     Whether the Defendant's Food Product marketing, packaging and/or labeling was misleading to the Plaintiff and Proposed Class members;

L.     Whether Defendant knew the Trans Fat Food was not fit for human consumption and intended to continue to use PHO to gain an unfair commercial or competitive benefit by doing so.

33.     Were if not for this class action, most class members would find the cost associated with litigating claims extremely prohibitive, which would result in no remedy to this widespread and ongoing harm.

34.     This class action would serve to preserve judicial resources, the respective parties' resources, and present fewer issues with the overall management of claims, while at the same time ensuring a consistent result as to each class member.

**FIRST CAUSE OF ACTION**
Consumers Legal Remedies Act, California Civil Code §§ 1770, *et seq.*
By Plaintiff and the Proposed Class against Defendant
(Injunctive Relief Only with Reservation)

35.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

36.     Plaintiff and the Proposed Class are "consumers" as defined by Civil Code § 1761(d).

37.     The Trans Fat Food is a "good" as defined by Cal. Civil Code § 1761(a).

11

38.     The Consumers Legal Remedies Act [Civil Code § 1770, *et seq.*] (the "CLRA") prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have [Civil Code § 1770(a)(5)].

39.     The CLRA prohibits representing that goods are of a particular standard, quality or grade if they are of another [Civil Code § 1770(a)(7)].

40.     The CLRA prohibits advertising goods with the intent not to sell them as advertised [Civil Code § 1770(a)(9)].

41.     The CLRA prohibits representing the subject of a transaction has been supplied in accordance with a previous representation when it has not [Civil Code § 1770(a)(16)].

42.     For the reasons set forth herein, the Defendant has violated each of the foregoing sections of the CLRA, thereby causing Plaintiff and Proposed Class irreparable harm and entitling them to injunctive relief and restitution.

43.     On November 30, 2016, Plaintiff served written notice and demand on Defendant in compliance with Civil Code § 1782(a) via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding remedies for Plaintiff and the Proposed Class members.  Plaintiff's notice and demand letter to Defendant is attached hereto as Exhibit B.

44.     Plaintiff seeks injunctive relief only for the foregoing violations of the CLRA, but reserves the right to amend this complaint to include allegations for the recovery of damages under the CLRA.

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION
Violation of California Business & Professions Code § 17200, *et seq.*
By Plaintiff and the Proposed Class against Defendant

45.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

46.    The Unfair Competition Law, California Business & Professions Code § 17200, *et seq.*, prohibits the Defendant from engaging in any unlawful, unfair or fraudulent business practices in connection with the conduct of its business.

47.    "Unfair competition" is defined by Business & Professions Code § 17200 as encompassing several types of business "wrongs," including, but not limited to: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, and (3) "unfair, deceptive, untrue or misleading advertising."  The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

48.    By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful and/or unfair business practices, and unfair, deceptive, untrue or misleading advertising prohibited by Business & Professions Code § 17200, *et seq.*

### A.    The "Unlawful" Prong

49.    Beginning at a date currently unknown through the time of this Complaint, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Business & Professions Code § 17200 by manufacturing, distributing, advertising, labeling and/or marketing the adulterated Trans Fat Food as legally compliant to be sold in the United States.

13

50.     The Defendant's conduct as set forth herein constitutes unlawful business practices insofar as it violates, *inter alia*, California Health & Safety Code §§ 110100, 110290, 110390, 110395, 110398, 110400, 110660, 110670, 110680, 110705, 110760, 110765 and 110770, 21 U.S.C. § 343(a) and 21 C.F.R. § 101.13(i)(3), 21 C.F.R. § 1.21, and 15 U.S.C. § 1125(a).

51.     The Defendant's violations of the foregoing statutes and regulations each constitutes an unlawful business practice pursuant to California Business and Professions Code § 17200.

## B.     The "Unfair" Prong

52.     Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendant has committed acts of unfair competition that are prohibited by Business & Professions Code § 17200, *et seq*.  Defendant engaged in a pattern of "unfair" business practices that include the manufacture, marketing and distribution of the Trans Fat Food that wrongfully contains PHO.

53.     Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the abovementioned statutes by engaging in practices that are immoral, unethical, oppressive or unscrupulous, the utility of such conduct, if any, being far outweighed by the harm done to consumers and against public policy by manufacturing, distributing, and/or marketing adulterated Trans Fat Food containing PHO.

54.     Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the abovementioned statutes by engaging in practices, including manufacturing, distributing, marketing, and/or advertising the Trans Fat Food in violation of 21 C.F.R. § 161.190 by falsely representing that the products contain no Trans Fat or inaccurately stated quantities of Trans Fat, wherein: (1) the injury

**CLASS ACTION COMPLAINT**

to the consumer was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was not of the kind that consumers themselves could not have reasonably avoided.

### C.   The "Unfair, Deceptive, Untrue or Misleading Advertising" Prong

55.    Defendant's advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that the Trans Fat Food is legally compliant to be sold in the United States, that it contains no Trans Fat or inaccurately stated quantities of Trans Fat and that therefore they are of marketable quality, quantity and workmanship, and that they were produced according to U.S. standards and laws when in fact they are not.

56.    Plaintiff, a reasonable consumer, and the public would be likely to be, and, in fact were, deceived and mislead by Defendant's advertising and labeling as they would, and did, interpret the Defendant's representation in accord with its ordinary usage, that the products were actually legally compliant to be sold in the United States when, in fact, they are not, and that they no Trans Fat or inaccurately stated quantities of Trans Fat, when in fact they contain harmful amounts of unsafe Trans Fat due to the unlawful inclusion of PHO as an ingredient, rendering the Trans Fat Food adulterated and unsafe for human consumption.

57.    Defendant's unlawful and unfair business practices and unfair, deceptive, untrue or misleading advertising presents a continuing threat to the public in that Defendant continues to engage in unlawful conduct resulting in harm to consumers.

58.    Defendant engaged in these unlawful and unfair business practices motivated solely by Defendant's self-interest with the primary purpose of collecting unlawful and unauthorized monies from Plaintiff and all others similarly situated thereby unjustly enriching Defendant.

59.    Such acts and omissions by Defendant are unlawful and/or unfair and

15

constitute a violation of Business & Professions Code section 17200 et seq. Plaintiff reserves the right to identify additional violations by Defendant as may be established through discovery.

60.   As a direct and proximate result of the aforementioned acts and representations described above and herein, Defendant received and continues to receive unearned commercial benefits at the expense of their competitors and the public.

61.   As a direct and proximate result of Defendant's unlawful and unfair conduct described herein, Defendant has been and will continue to be unjustly enriched by the receipt of ill-gotten gains from customers, including Plaintiff and the Proposed Class, who unwittingly provided money to Defendant based on Defendant's actual and implied representations when Defendant's products are harmful, adulterated, unsafe and not fit for human consumption.

62.   Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendant as a result of Defendant's unfair, unlawful, deceptive business practices in connection with the sale and purchase of the Trans Fat Food.

63.   In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which is available to a prevailing plaintiff in class action cases such as this matter.

64.   Pursuant to Business & Professions Code § 17203, Plaintiff and the Proposed Class seek from Defendants, and each of them, restitution and the disgorgement of all earnings, profits, compensation, benefits and other ill-gotten gains obtained by defendants as a result of Defendant's conduct in violation of Business & Professions Code § 17200 et seq.

65.   Pursuant to Business & Professions Code § 17204, Plaintiff and the Proposed Class seek an order of this Court enjoining Defendants, and each of them, from continuing to engage in the acts as set forth in this complaint, which acts constitute

16

**CLASS ACTION COMPLAINT**

violations of Business & Professions Code § 17200 *et seq.*  Plaintiff, the Proposed Class and the general public will be irreparably harmed if such an order is not granted.

## THIRD CAUSE OF ACTION
Violation of California Business & Professions Code §§17500, *et seq.*
By Plaintiff and the Proposed Class against Defendant

66.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67.     This cause of action is brought pursuant to the Unfair Competition Law at Business & Professions Code § 17200, *et seq.*

68.     Plaintiff brings this cause of action as an individual, in his capacity as a private attorney general, and on behalf of the Proposed Class.

69.     Defendant intended to sell the Trans Fat Food to Plaintiff and the Proposed Class.

70.     Defendant disseminated advertising before the public in California that: (a) contained statements that were illegal, untrue or misleading; (b) defendants knew, or in the exercise of reasonable care should have known, was illegal, untrue or misleading; (c) concerned the nature, quantity and characteristics of goods intended for sale to California consumers, including Plaintiff and the Proposed Class; and (d) was likely to mislead or deceive a reasonable consumer.

71.     The illegal, untrue and/or misleading statements and representations made by these defendants include but are not limited to:

a.     Words that state or imply that the Trans Fat Food contain no Trans Fat or that inaccurately indicate the quantity of Trans Fat when, in fact, the Defendant knew that the Trans Fat Food contains PHO and harmful, unsafe quantities of Trans Fat beyond what was represented on the packaging and/or labeling.

17

**CLASS ACTION COMPLAINT**

b.      Words that state or imply that the Trans Fat Food is fit for human consumption when, in fact, it contains PHO and harmful, unsafe quantifies of Trans Fat, is therefore adulterated, and is unfit for human consumption.

c.      Words that state or imply that the Trans Fat Food is healthy when, in fact, it contains PHO, is adulterated and is unfit for human consumption.

72.      Pursuant to California Business & Professions Code §§ 17500, *et seq.*, it is unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

73.      Defendant knew or should have known, through the exercise of reasonable care that its representations about the Trans Fat Food were false, untrue and misleading to Plaintiff, the Proposed Class members and the general public.

74.      Defendant's actions in violation of § 17500 were false and misleading such that the Plaintiff, the Proposed Class and the general public are and were likely to be deceived.

75.      Plaintiff and the Proposed Class lost money or property as a result of Defendant's false advertising insofar as Plaintiff and the Proposed Class would not have purchased the Trans Fat Food if they had reason to know that the Trans Fat Food was unfit for human consumption and contained harmful quantities of Trans Fat.

76.      Plaintiff and the Proposed Class paid a premium for the Trans Fat Food due to their reliance on Defendant's good faith and reputation and upon Defendant's product labels and express and implied promises that the Trans Fat Food was healthy and

**CLASS ACTION COMPLAINT**

contained no Trans Fat or only the quantity of Trans Fat indicated on the package or label.

## FOURTH CAUSE OF ACTION
Breach of Express Warranty
By Plaintiff and the Proposed Class against Defendant

77.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

78.    Plaintiff brings this claim individually and on behalf of the Proposed Class against Defendant.

79.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Trans Fat Food contained no Trans Fat or the quantity of Trans Fat identified on the package or label.

80.    Defendant gave Plaintiff and the Proposed Class a description of the Trans Fat Food that included a representation that the Trans Fat Food contained no Trans Fat or the quantity identified on the package or label.

81.    The true facts are that the Trans Fat Food does not contain no Trans Fat, but actually contain harmful quantities of Trans Fat, and therefore does not meet the quality represented by the Defendant and are, in fact, unsafe and unfit for human consumption.

82.    The Trans Fat Food is not suitable for sale in the United States because each of the express warranties regarding Trans Fat content is false.

83.    Plaintiff took reasonable steps to notify the Defendant that the Trans Fat Food included false representations.

84.    Defendant's breach of express warranty is the direct and proximate cause of Plaintiff and the Proposed Class who have been harmed because they would not have purchased the Trans Fat Food for the agreed-upon price if they knew the Trans Fat Food contained harmful quantities of Trans Fat.

**CLASS ACTION COMPLAINT**

85.     The failure of the Defendant to provide the Trans Fat Food as represented was a substantial factor in causing harm to the Plaintiff and the Proposed Class.  As a proximate result of this breach of warranty, Plaintiff and the Proposed Class have suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
Breach of the Implied Warranty Of Merchantability
By Plaintiff and the Proposed Class against Defendant

86.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

87.     Plaintiffs and the Proposed Class purchased the Trans Fat Food, which set forth a label or container making statements of fact with respect to the quantity Trans Fat contained therein.  Defendant breached the implied warranty of merchantability because Plaintiffs and the Proposed Class did not receive goods that conformed to the promises or affirmations of fact on the Defendant's containers or labels.

88.     At the time of purchase, Defendant was in the business of selling the Trans Fat Food as a consumer good to the Plaintiff, the Proposed Class and the general public as the designer, manufacturer, marketer, distributor, and/or seller.  Defendant impliedly warranted that the Trans Fat Food contained lawful ingredients, contained no Trans Fat or contained only the amount of Trans Fat indicated on the package or label, and was legal for sale in the United States.

89.     Defendant breached the warranty implied in the sale of the Trans Fat Food because the Trans Fat Food was not of the same quality as those generally accepted in the trade, was not fit for the ordinary purpose for which such goods are used, was not adequately or accurately packaged or labeled, and did not measure up to the promises or

**CLASS ACTION COMPLAINT**

facts stated on the container or label.  As a result, Plaintiff and the Proposed Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

90.    Plaintiff and the Proposed Class purchased the Trans Fat Food in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose intended.  The Trans Fat Food was not altered by Plaintiff or the Proposed Class and, rather, was defective when it left the exclusive control of Defendant.  Defendant knew that the Trans Fat Food would be purchased and used without additional testing or measurement by Plaintiff or the Proposed Class.

91.    The Trans Fat Food was defective and unfit for its intended purpose such that Plaintiff and the Proposed Class did not receive the goods as warranted.

92.    Defendant's breach of the implied warranty is the direct and proximate cause of harm to Plaintiff and the Proposed Class members because they would not have purchased the Trans Fat Food on the agreed-upon terms if the true facts were known concerning the quantity of Trans Fat contained therein and the failure to comply with federal regulations.  Plaintiff and the Class paid a premium for the Trans Fat Food due to Defendant's promises, and the Trans Fat Food did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

93.    As a proximate result of this breach of warranty by Defendant, Plaintiff and the Proposed Class have suffered damages in an amount to be determined at trial.

/ / /

/ / /

/ / /

21

**CLASS ACTION COMPLAINT**

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

1.      For an order certifying the Proposed Class under Rule 23 of the Federal Rules of Civil Procedure;

2.      For an order certifying Plaintiff as the representative of the Proposed Class and certifying Plaintiff's attorneys as Class Counsel to represent the interests of the Proposed Class;

3.      For an order declaring the Defendant's conduct violates the statutes and laws identified herein;

4.      For an order of judgment in favor of Plaintiff and the Proposed Class on all causes of action alleged herein;

5.      For an award of compensatory and punitive damages in amounts to be determined;

6.      For prejudgment interest;

7.      For an order of restitution and all other forms of equitable monetary relief;

8.      For an order disgorging the Defendant's ill-gotten gains as alleged herein;

9.      For an order of injunctive relief to remedy the past, present and threatened future harm of Defendant's conduct as set forth herein;

10.      For an order awarding Plaintiff and the Proposed Class reasonable attorneys' fees and costs of suit; and

11.      For all other relief this Court deems just and proper.

/ / /

**CLASS ACTION COMPLAINT**

# DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: November 30, 2016          **NATHAN & ASSOCIATES, APC**

                                  By:      /s/ Reuben D. Nathan
                                           Reuben D. Nathan,
                                           Attorney for Plaintiff,
                                           IAN ANDERSON

Dated: November 30, 2016          **LAW OFFICES OF ROSS CORNELL, APC**

                                  By:      /s/ Ross Cornell
                                           Ross Cornell,
                                           Attorney for Plaintiff,
                                           IAN ANDERSON

23

**CLASS ACTION COMPLAINT**

# "EXHIBIT A"

(the "Trans Fat Food")

Swanson® Chicken Pot Pie (Frozen Meal)

Swanson® Turkey Pot Pie (Frozen Meal)

Swanson® Beef Pot Pie (Frozen Meal)

Hungry-Man® Smokin' Backyard Barbeque (Frozen Meal)

Hungry-Man® Salisbury Steak (Frozen Meal)

Hungry-Man® Selects Slow-Cooked Seasoned Pulled Pork (Frozen Meal)

Hungry-Man® Selects Fajita Chicken (Frozen Meal)

Hungry-Man® Boneless Fried Chicken (Frozen Meal)

Hungry-Man® Selects Classic Fried Chicken (Frozen Meal)

Hungry-Man® Selects Bolden Battered Chicken with Cheese Fries (Frozen Meal)

Hungry-Man® Selects Country Fried Steak (Frozen Meal)

Hungry-Man® Mexican Style Fiesta (Frozen Meal)

Hungry-Man® Home-Style Meatloaf (Frozen Meal)

Duncan Hines® Signature Tres-Leches (Cake Mix)

Duncan Hines® Classic White (Cake Mix)

Duncan Hines® Signature Banana Supreme (Cake Mix)

Duncan Hines® Classic Yellow (Cake Mix)

Duncan Hines® Signature Strawberry Supreme (Cake Mix)

Duncan Hines® Signature Lemon Supreme (Cake Mix)

Duncan Hines® Signature Pineapple Supreme (Cake Mix)

24

# "EXHIBIT B"

(Notice and Demand Letter)

**CLASS ACTION COMPLAINT**

LAW OFFICES OF
# ROSS CORNELL
A PROFESSIONAL CORPORATION

111 WEST OCEAN BLVD., SUITE 400 • LONG BEACH, CALIFORNIA 90802
TELEPHONE (562) 612-1708 • FACSIMILE (562) 394-9556
EMAIL: ROSS.LAW@ME.COM

November 30, 2016

Pinnacle Foods, Inc.                                   **Via Certified U.S. Mail**
399 Jefferson Rd.                                      **Return Receipt Requested**
Parsippany, NJ 07054

**Re:**   **Notice of Violation of California Consumer Legal Remedies Act and 30 Day Right to Cure Under Civil Code Section 1782.  This is a Demand Letter and Must be Forwarded to the Appropriate Party For Immediate Resolution.**

Dear Sir or Madame:

**PLEASE TAKE NOTICE** that we believe Pinnacle Foods, Inc. (hereinafter "Pinnacle") is in violation of the California Consumer Legal Remedies Act, *Cal. Civil Code* § 1750, *et seq.* (the "CLRA"), for the reasons set forth below.

We represent California consumer Ian Anderson who has purchased Swanson brand pot pies, Duncan Hines brand cake mix and Hungry-Man brand frozen meals.  A list of Pinnacle food products that unlawfully contain partially hydrogenated oils and/or that set forth false and misleading labels regarding trans fat content is set forth in Appendix A to this letter (the "Food Products").  At all times the Food Products, including the goods purchased by Mr. Anderson, included Partially Hydrogenated Oils (hereinafter "PHO") that rendered them "adulterated" within the meaning of applicable law and set forth labels that were false or misleading with respect to the presence and amount of trans fat contained therein.  Our client paid for Pinnacle food products in reliance on Pinnacle's representations and is, therefore, an aggrieved customer.

Section 1770 of the CLRA lists a number of unfair methods of competition and unfair or deceptive acts or practices. The following are some of the prohibited acts under CLRA:

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have [Civil Code § 1770(a)(5)]
- Representing that goods are of a particular standard, quality or grade if they are of another [Civil Code § 1770(a)(7)]
- Advertising goods with the intent not to sell them as advertised [Civil Code § 1770(a)(9)]
- Representing the subject of a transaction has been supplied in accordance with a previous representation when it has not [Civil Code § 1770(a)(16)]

Pinnacle Foods, Inc.
November 30, 2016
Page 2 of 5

Pinnacle committed multiple violations of the CRLA in connection with the production, advertising, labeling and sale of the Food Products as set forth herein below.

PHO is a food additive that has been banned in the United States and many other parts of the world due to its high levels of artificial trans fats (hereinafter "Trans Fats"). Trans Fats are known carcinogens, are a leading cause of coronary heart disease, negatively effect cholesterol levels, increase the risk of stroke and type II diabetes, cause cognitive decline and Alzheimer's Disease, and result in adverse effects on fetuses and breastfeeding infants such as impaired growth.

PHO is the main source of Trans Fat in the diets of American consumers. Despite its use of PHO in the Food Products and the fact that PHO results in dangerous quantities of Trans Fat in the Food Products, Pinnacle intentionally mislabels some or all of the Food Products by indicating that they contain no Trans Fat for the purpose of inducing consumers to purchase them.

On June 16, 2015, the United States Food and Drug Administration (the "FDA") issued a final determination that PHO is unsafe because of its negative health effects. Even after the FDA Order, Pinnacle continues to include PHO in the Food Products, with full knowledge that PHO is an unlawful, unhealthy, unsafe, toxic food additive that renders the Food Products adulterated.

Safe, low-cost and commercially acceptable alternatives are available that can replace PHO, including alternatives presently in use by Pinnacle's competitors. Reasonable healthy alternatives notwithstanding, Pinnacle intentionally elects to utilize PHO instead of safe alternatives in an effort to unfairly compete and increase its profits at the expense of consumer health and safety, resulting in the widespread sale of adulterated Food Products to consumers. There is voluminous scientific evidence that there is no safe level of PHO or Trans Fat and that its effect on the American consumer is substantially harmful to health.

On July 11, 2003, the FDA published a final rule in the Federal Register that amended its regulations on food labeling to require that Trans Fat be declared in the nutrition label of conventional foods and dietary supplements (the "Labeling Order"). The rule became effective January 1, 2006, and sets forth the FDA's position on the issue of Trans Fats in consumer food products. The FDA recommends that consumers limit their intake of Trans Fat. In order for consumers to have the opportunity to follow the FDA recommendations, consumers must know the amount of Trans Fat in the foods they eat.

Despite the clear direction provided by the Labeling Order, Pinnacle has failed and refused to provide adequate, accurate, reliable labeling regarding Trans Fat content in the Food Products. As a result of the confusing, inconsistent and misleading labeling of the Trans Fat content in the Food Products, reasonable consumers – including Mr. Anderson and others – are unable to make informed decisions about their dietary intake of harmful Trans Fat. In an effort to conceal and obfuscate the presence of harmful Trans Fat in the Food Products, and in order to render it unreasonably difficult for the average consumer

Pinnacle Foods, Inc.
November 30, 2016
Page 3 of 5

to properly evaluate the Trans Fat Food for dietary health implications, Pinnacle places confusing, misleading labels on the Trans Fat Food by, *inter alia*, failing and refusing to comply with the Labeling Order, by making no Trans Fat disclosure on nutrition information labels and by indicating 0g of Trans Fat in products that contain PHO and that, therefore, do contain Trans Fat.

In comparing food purchase options, Mr. Anderson and others are misled insofar as foods whose labels contain no Trans Fat disclosure are reasonably presumed to contain no or less Trans Fat than foods that present Trans Fat in their nutrition information label. Pinnacle's practice in this regard is misleading because, in truth, those Food Products that do not include a Trans Fat disclosure on their nutrition information label do, in fact, contain PHO and therefore necessarily include Trans Fat.  The reasonable conclusion drawn by Mr. Anderson and others – i.e. that foods with no Trans Fat disclosure on their nutrition information label have no Trans Fat as compared to those foods with a Trans Fat disclosure on their nutrition information label – is nonetheless a false conclusion that is the result of misleading labeling of the Food Products by Pinnacle.

Mr. Anderson and others reasonably rely on the prominent large print nutrition information on the Food Product labels, and reasonably be expected to and did not sift through lengthy fine print in the ingredients list of the Food Products in order to discover that the nutrition information labeling is misleading.  Mr. Anderson and others are, therefore, the victims of a planned pattern and scheme of misleading labeling regarding Trans Fat content in the Food Products that violates the CLRA.

Pinnacle's conduct in advertising and selling the Food Products bearing labels that set forth inaccurate statements regarding the presence and quantity of Trans Fat violates the CLRA.  Pinnacle's Food Product packaging advertised Food Products as having no Trans Fat when they clearly contained PHO and necessarily contain Trans Fat – and therefore Pinnacle had no intention of selling the Food Products as advertised, in violation of the CLRA.  Likewise, Pinnacle's sale and delivery to consumers of Food Products that contain different amounts of Trans Fat than the amounts that are clearly indicated on product packaging violates the CLRA.  Pinnacle has violated and continues to violate subsections (a)(5), (a)(7) (a)(9) and (a)(16) of the CLRA by committing the acts and practices described herein.

The foregoing conduct on the part of Pinnacle also constitutes a breach of express and implied warranties in violation of U.C.C. § 2-313 and 2-314.  This letter shall serve as notice of breach as required by § 2-607(3)(a).

Pinnacle's pattern and practice of falsely advertising the Trans Fat and content of the Food Products constitutes an unfair business practice within the meaning of California Business and Professions Code § 17200 and false advertising pursuant to § 17500.

Pinnacle Foods, Inc.
November 30, 2016
Page 4 of 5

**YOU HAVE THIRTY (30) DAYS** from the date on which this notice is served upon you to correct, repair, replace, or otherwise rectify the foregoing violations of the CLRA as to our client and all aggrieved consumers.  Our client demands that Pinnacle immediately cease the unlawful business practices described herein, recall the Food Products, disgorge the profits derived from its unlawful business practice and false advertising, and make restitution to our client and all similarly situated purchasers of the Food Products, without limitation.

**FAILURE TO TAKE ACTION WITHIN 30 DAYS OF THE RECEIPT OF THIS NOTICE SHALL RESULT IN THE FILING OF A CIVIL LAWSUIT IN U.S. DISTRICT COURT** for damages, restitution and injunctive relief and all other appropriate relief on behalf of our client and all others similarly situated pursuant to *Cal. Civil Code* § 1780, *et seq.*, *Cal. Business and Prof. Code* §§ 17200 and 17500 and for statutory damages, punitive damages, treble damages, and attorney fees and costs as authorized by law.

Any response hereto shall be provided in written format and shall be clear and understandable and mailed via certified mail to the following addresses:

ROSS CORNELL
111 W. OCEAN BLVD., SUITE 400
LONG BEACH, CA 90802

REUBEN D. NATHAN
600 W BROADWAY STE 700
SAN DIEGO, CA 92101-3370

**NOTICE AND DEMAND TO PRESERVE EVIDENCE.**  This letter also constitutes notice to Pinnacle Foods, Inc. that it is not to destroy, conceal or alter in any manner whatsoever any evidence, documents, merchandise, information, paper or electronic data and/or other tangible items or property potentially discoverable in the above- referenced matter, including but not limited to documents that relate to Pinnacle's processes for manufacturing, labeling and packaging the Food Products, documents that evidence Pinnacle's knowledge of consumer complaints regarding the presence of PHO or amount of Trans Fat in Food Products marketed or distributed by Pinnacle and its affiliated companies, and all documents that relate to Pinnacle's advertising practices regarding the Food Products.  In order to assure that Pinnacle's obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein and other relevant evidence.

We look forward to your written response.  If you fail to adequately redress the matters

Pinnacle Foods, Inc.
November 30, 2016
Page 5 of 5

set forth herein within thirty (30) days, be advised that we will seek damages under Civil
Code § 1780 on a class-wide basis.

Best regards,


ROSS CORNELL

# "APPENDIX A"

(the "Food Products")

Swanson® Chicken Pot Pie (Frozen Meal)

Swanson® Turkey Pot Pie (Frozen Meal)

Swanson® Beef Pot Pie (Frozen Meal)

Hungry-Man® Smokin' Backyard Barbeque (Frozen Meal)

Hungry-Man® Salisbury Steak (Frozen Meal)

Hungry-Man® Selects Slow-Cooked Seasoned Pulled Pork (Frozen Meal)

Hungry-Man® Selects Fajita Chicken (Frozen Meal)

Hungry-Man® Boneless Fried Chicken (Frozen Meal)

Hungry-Man® Selects Classic Fried Chicken (Frozen Meal)

Hungry-Man® Selects Bolden Battered Chicken with Cheese Fries (Frozen Meal)

Hungry-Man® Selects Country Fried Steak (Frozen Meal)

Hungry-Man® Mexican Style Fiesta (Frozen Meal)

Hungry-Man® Home-Style Meatloaf (Frozen Meal)

Duncan Hines® Signature Tres-Leches (Cake Mix)

Duncan Hines® Classic White (Cake Mix)

Duncan Hines® Signature Banana Supreme (Cake Mix)

Duncan Hines® Classic Yellow (Cake Mix)

Duncan Hines® Signature Strawberry Supreme (Cake Mix)

Duncan Hines® Signature Lemon Supreme (Cake Mix)

Duncan Hines® Signature Pineapple Supreme (Cake Mix)